D. Chris Albright (No. 004904)
**ALBRIGHT STODDARD WARNICK & ALBRIGHT. P.C.**
Quail Park I, Building D-4
801 South Rancho Drive
Las Vegas, Nevada  89106-3854
Telephone:  (702) 384-7111
Facsimile:  (702) 384-0605
Email: dca@albrightstoddard.com

Mark A. Fuller (Pro Hac Vice)
Glen Hallman (Pro Hac Vice)
**GALLAGHER & KENNEDY, P.A.**
2575 East Camelback Road, Suite 1100
Phoenix, Arizona  85016
Telephone:  (602) 530-8000
Facsimile:  (602) 530-8500
Email: maf@gknet.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| TASER INTERNATIONAL, INC., <br><br> Plaintiff, <br><br> vs. <br><br> STINGER SYSTEMS, INC.; JAMES F. MCNULTY, Jr.; and ROBERT GRUDER, <br><br> Defendants. | No.  2:09-CV-00289-KJD-PAL <br><br> **MOTION FOR RULING RE WAIVER OF PRIVILEGE OR OTHER OBJECTIONS AS TO DOCUMENTS VOLUNTARILY PRODUCED BY DEFENDANTS STINGER AND GRUDER** |

Counsel for defendants Stinger Systems and Robert Gruder recently produced approximately 31,000 documents in response to the Court's order re e-discovery. Defendants did not produce a privilege log indicating that they withheld any documents. And as TASER's counsel began reviewing the documents, it gradually became apparent that no documents were, in fact, withheld – i.e., that defendants voluntarily produced the documents without conducting a privilege review. In other words, this was not a matter of inadvertent production, but a deliberate decision to dump tens of thousands of

documents on TASER without the slightest effort to protect against disclosure of privileged materials. Although this is plainly a waiver of any privilege, TASER's counsel interrupted its review to bring this motion seeking a formal ruling as to the waiver of any objections (privilege or otherwise) to the documents produced. TASER does so in an abundance of caution, to avoid any after-the fact argument claim that its counsel somehow acted improperly in reviewing the documents.

This motion is supported by the following memorandum.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### Defendants' Production

The Court has held regular status conferences, and is aware of the efforts TASER has made to try and obtain full, fair production of documents from the defendants in this case. Ultimately, the Court ordered defendants to produce documents following an e-discovery protocol, using search terms proposed by TASER which the Court found reasonable. In so ordering, the Court emphasized in strong terms the need for all parties to compile a privilege log for any documents being withheld, as required by Rule 26(b)(5). In fact, the Court went so far as to read this Rule aloud to all counsel at the last hearing.

On the afternoon of August 26, counsel for defendants Stinger and Gruder produced two disks to TASER's local Nevada counsel. They were not accompanied by a privilege log or any correspondence indicating that any documents had been withheld. The disks contained approximately 31,000 documents, which appear to have been retrieved by Stinger itself.

The disks were forwarded to TASER's counsel in Arizona, Gallagher & Kennedy ("G&K"). The documents, however, were in a format that was not readily viewable. G&K's information technology department addressed this problem by converting the

documents into a readable format, allowing them to be reviewed by counsel using a software program called "e-docs."

G&K lawyers began the arduous review process late last week. As that review progressed, it became clear that the documents had not been reviewed for privilege. There were, for example, dozens of e-mails between Stinger/Gruder and P. Sterling Kerr (Stinger's and Gruder's counsel of record in this case), Stefan V. Stein (Stinger's counsel of record in Arizona litigation between TASER and Stinger[1]), and John Anthony (apparently Stinger's bankruptcy counsel) . The number of such documents was inconsistent with any effort at all, let alone a reasonable effort, to assert a privilege objection. This is consistent with the fact that defendants did not produce a privilege log indicating that any documents had, in fact, been withheld on privilege grounds. In other words, this was not "inadvertent." And, there have already been other examples in this case where these same defendants have volunteered otherwise privileged information about communications with (and advice received from) their counsel.[2]

That said, TASER does not want to be accused, after the fact, that it is somehow acting improperly in reviewing this voluminous production of documents. So it has interrupted its substantive review process to seek a formal ruling from this Court that any privilege or other objections have been waived. This is that motion. Because G&K has only reviewed a portion of the production, TASER is not in a position to inform the Court

---

[1] *TASER International, Inc. v. Stinger Systems, Inc.*, Case no. CV07-0042-PHX-MHM, U.S. District Court for the District of Arizona.

[2] For example, these defendants answered interrogatories, dated June 10, 2010, by explaining what advice they claim to have received from: (a) the Phoenix law firm, Fennemore Craig, which was Stinger's former counsel of record in this case and; and (b) defendant McNulty, whom Stinger claims has been the company's "pro bono" counsel for years. (Just a few weeks ago, on August 23, Stinger posted a message on its website indicating that Mr. McNulty had been "discharged as Stinger Systems, Inc.'s and Robert Gruder' attorney. *See* http://www.stingersystems.com/.)

2

of precisely how many otherwise privileged documents were included in this production. However, based on what G&K saw in the beginning of its review, along with the information available about who wrote various e-mails and other communications, TASER believes that the production included literally *hundreds* of such documents, many of which are on matters directly relevant to this litigation.[3]

## II.

### Defendants' Voluntary Production Waived Any Privilege Or Other Objections

Ninth Circuit law on waiver of the attorney-client privilege is settled.  In a seminal case, *Weil v. Investment/Indicators, Research and Management, Inc.*, 647 F.2d 18, 24 (9th Cir. 1981) (citing many cases), the court explained that "[b]ecause it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed. Accordingly, it has been widely held that voluntary disclosure of the content of a privileged attorney communication constitutes waiver of the privilege as to all other such communications on the same subject."  *Id.* at 24.  Continuing, the court quoted Wigmore's treatise:

> (W)hen (the privilege holder's) conduct touches a certain point of disclosure, fairness requires that his privilege shall cease whether he intended that result or not.  He cannot be allowed, after disclosing as much as he pleases, to withhold the remainder.

*Id.*  The court also noted that the party's *subjective* intent was immaterial.  The party's "bare assertion that it did not subjectively intend to waive the privilege is insufficient to make out the necessary element of nonwaiver." *Id.* at 25.  *Accord United States v. Chaiban*, 2007 WL 437704, *19 (D. Nev. Feb. 2, 2007) (citing *Weil,* noting that the party asserting privilege has the burden of establishing non-waiver, and explaining that "[i]t is

---

[3] A few of the documents included in the production also suggest that a proposed sale transaction in Stinger's pending Florida Assignment for the Benefit of Creditors ("ABC") case is fraudulent.  Because the transaction could be consummated as early as tomorrow, TASER is today filing an appropriate motion in Florida to advise that court of this situation.

3

well established that "voluntary disclosure of the content of a privileged attorney communication constitutes a waiver of the privilege as to all other such communications on the same subject.")

Most cases, of course, involved *inadvertent* production of privileged matters, and the scope of a waiver under those circumstances.  And even inadvertent disclosure typically results in waiver – not only as to the communication disclosed, but also as to the general subject matter.  This Court authored one of the most extensive published opinions on the subject.  *See Aspex Eyewear, inc. v E'Lite Optik, Inc*., 276 F.Supp.2d 1084 (D. Nev. 2003).   But as explained above, this case involves a deliberate, intentional production of documents.  So this does not present a close question.  Voluntary production of hundreds of otherwise privileged materials is a waiver by definition.  *See Weil*, 647 F.2d at 25 n. 13 (when a privileged communication is "voluntarily disclosed without objection by the asserting party's counsel and in the absence of surprise or deception by opposing counsel, it may be unnecessary to look beyond the objective fact of disclosure in ruling on the question of waiver.")

Our research has not uncovered a *single* case where a court has held that a party does not waive the privilege by simply turning over otherwise privileged materials as part of a general production.  However, in those instances where, unlike here, a party has taken *some* effort to protect against inadvertent disclosure of privileged documents, courts have opined on what constitutes a reasonable effort in that regard.  As the Ninth Circuit has stated, "we will deem the privilege to be waived if the privilege holder fails to pursue all reasonable means of preserving the confidentiality of the privileged matter." *United States v. de la Jara*, 973 F.2d 746, 750 (9th Cir. 1992).  And in this regard, the law is clear that a party must prove that there was a careful, thorough review of the documents and real diligence in protecting against inadvertent disclosure.

A recent representative case is *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 250 F.R.D. 251 (D. Md. 2008).  There, applying the same waiver test employed by the Ninth Circuit,[4] the court held that defendants had waived the privilege by producing 165 arguably privileged documents in a batch of e-discovery.  The defendants presented evidence that they had in fact taken steps to protect against inadvertent production.  They had, for example, worked with their forensic expert to develop a list of search terms designed to locate potentially privileged documents from among the universe of the text-searchable documents retrieved.  For the non-text searchable documents, counsel also undertook a manual review of the title pages, and where the titles suggested a privilege issue, counsel then reviewed the content of those documents.  The defendants argued that this was an efficient, cost-effective way of culling through what otherwise would have been an "unwieldy review" of the documents which would "delay production."

The court held that defendants had not met their burden to demonstrate that production of 165 arguably privileged documents was not a waiver.  Addressing the text-searchable documents, the court noted that it was unclear how the search terms were derived or what they consisted of, and what quality controls were employed to assure that the process was in fact effective.  250 F.R.D. at 262 ("Defendants have failed to demonstrate that the keyword search they performed on the text-searchable ESI was reasonable. Defendants neither identified the keywords selected nor the qualifications of the persons who selected them to design a proper search; they failed to demonstrate that there was quality-assurance testing; and when their production was challenged by the Plaintiff, they failed to carry their burden of explaining what they had done and why it was sufficient.").  And as for the hard copy review of the other documents, the court

---

[4] This is often called the "intermediate" test for waiver.  *See generally* 8 C. Wright & A. Miller, *Federal Practice & Procedure*, § 20.16.2, at 241 (1994) (discussing three approaches adopted by the courts).

found that reasonable diligence required a substantive, individualized review, not a cursory look at the documents' title pages. Given that defendants' counsel decided not to undertake an individualized review (nor asked for additional time to do so), "[d]efendants' protests that they did their best and that their conduct was reasonable rings particularly hollow." *Id.*

In words equally applicable to this case, the *Stanley* court also addressed the practical consequences of the waiver. Because the defendants had produced more than a hundred arguably privileged documents to the plaintiff, "this case does not present an instance of a single document slipping through the cracks." 250 F.R.D. at 263. Moreover, many of the documents were e-mails between client and counsel, draft discovery responses, comments on settlement issues in other litigation, and so forth. "Thus, the disclosures were substantive – including numerous communications between defendants and their counsel. . . .[A] any order issued now by the court to attempt to redress these disclosures would be the equivalent of closing the barn door after the animals have already run away." *Id.* (citing *FDIC v. Marine Midland Realty Credit Corp.*, 138 F.R.D. 479, 483 (E.D. Va. 1991); *Parkway Gallery Furniture, Inc. v. Kittinger/Pennsylvania/House Group*, 116 F.R.D. 46, 52 (M.D.N.C. 1987)). It was also "noteworthy" that "the Defendants did not discover the disclosure, but rather the Plaintiff made the discovery and notified the Defendants that potentially privileged/protected ESI had been produced." *Id.*

Finally, the court also rejected the defendants' argument that it was somehow "unfair" to find a waiver under the circumstances. "Every waiver of the attorney-client privilege produces unfortunate consequences for the party that disclosed the information. "If that alone were sufficient to constitute an injustice, there would never be a waiver. The only 'injustice' in this matter is that done by Defendants to themselves." 250 F.R.D. at 263. Echoing the Ninth Circuit's comment in *Weil*

6

regarding the "full and free discovery of the truth," the court emphasized that when a party is careless in its efforts to protect against disclosure, "[i]It is seldom 'fundamentally unfair' to allow the truth to be made public." *Id.,* quoting *Marine Midland*, 138 F.R.D. at 483.

The same analysis plainly applies here. Meanwhile, at the risk of repeating ourselves unnecessarily, this case does not appear to involve any kind of review at all, let alone the kind of review the court found insufficient in *Stanley*. From all appearances, defendants simply retrieved documents, loaded them on to disks, and produced them. Defendants did not create a privilege log reflecting that they withheld even one document out of 31,000. This was not an inadvertent disclosure, or a document slipping through the cracks. Rather, it was a voluntary waiver, pure and simple. It would be difficult to imagine a clearer example.

## III.
## Conclusion

The Court should rule that defendants' voluntary production of documents waived any privilege or other objection, thereby allowing TASER to continue and complete its review of those documents so that this case can move forward.

Respectfully submitted this 7th day of September 2010.

**GALLAGHER & KENNEDY, P.A.**

By: s/ Mark A. Fuller
Mark A. Fuller
Glen Hallman
2575 East Camelback Road, Suite 1100
Phoenix, Arizona  85016-9225

and

7

D. Chris Albright
Albright Stoddard Warnick & Albright, P.C.
Quail Park I, Building D-4
801 South Rancho Drive
Las Vegas, Nevada  89106-3854

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on the 7th day of September, 2010, I electronically transmitted the attached document to the Clerk of the Court using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

P. Sterling Kerr, Esq.
Marvin L.P. Simeon, Esq.
LAW OFFICES OF P. STERLING KERR
2450 St. Rose Parkway, Suite 120
Henderson, Nevada  89074
*Attorneys for Defendants Stinger Systems, Inc. and Robert Gruder*

D. Chris Albright, Esq.
Albright Stoddard Warnick & Albright, P.C.
Quail Park I, Building D-4
801 South Rancho Drive
Las Vegas, Nevada  89106-3854
*Co-Counsel for Plaintiff*

I further certify that on the 7th day of September, 2010, I served the attached documents via electronic mail and U.S. Postal Service, First-Class Postage Prepaid, on the following party, who is not a registered participant on the CM/ECF System:

James McNulty
10620 Southern Highland Parkway, Suite 110
Las Vegas, Nevada  89141
Defendant *Pro Se*

By:    s/ Donna Navarro

2537769 / 20791-0003