**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| TASER INTERNATIONAL, INC.,                        Plaintiff, | Case No. 2:09-cv-00289-KJD-PAL |
| vs. | **ORDER** |
| STINGER SYSTEMS, INC., *et al.*,                        Defendants. | (Mot Compel - Dkt. #80) |

Before the court is Plaintiff's Motion to Compel Production of Financial Records (Dkt. #80). The court has been conducting periodic status and dispute resolution conferences in this matter and requiring the parties to submit joint status reports outlining any discovery disputes on which they have reached an impasse.  The parties' current dispute involves Defendants' responses to Plaintiff's first request for production of documents.  Plaintiff seeks to compel the Defendants to produce financial records and tax returns, and documents regarding stock acquired and disposed of by Defendant Gruder, and stock options issued to Defendants McNulty and Gruder, and other executives at Stinger.  The court has considered the parties' joint status reports discussing their disputes, Defendant McNulty's brief on damages (Dkt. #79) and opposition to Plaintiff's motion to compel production of his tax records (Dkt. #82), Taser's memorandum regarding discovery of financial records (Dkt. #80), Defendant Stinger Systems Inc. and Robert Gruder's joinder in McNulty's brief (Dkt. #84), and Defendant McNulty's supplemental response (Dkt. #87).

**BACKGROUND**

The Complaint (Dkt. #1) in this case was filed on February 11, 2009.  Plaintiff alleges that Defendant McNulty and the President of Defendant Stinger, Defendant Robert Gruder, were involved in issuing misleading press releases to manipulate the stock market by depressing the value of Taser's

stock shares. Taser alleges that Defendants' press releases simultaneously increased the stock prices of its competitors. Plaintiff believes that Defendant McNulty engaged in a "pump and dump" scheme to depress Taser's stock while simultaneously increasing the stock of Taser's competitor, LEA. By doing so, McNulty profited by selling off 750,000 shares he held in Taser's competitor, LEA. McNulty has invoked his Fifth Amendment privilege against self-incrimination to some of Plaintiff's discovery requests. Taser has asked for production of: (a) Defendants' tax returns; (b) documents reflecting Defendants' acquisition and disposal of stock in Stinger or any of Taser's other competitors; and (c) stock options issued to or exercised by Defendants McNulty, Gruder and other executives at Stinger. Taser has also requested production of Stinger Systems' sales information in or around the time the Defendants were engaged in the conduct outlined in the Complaint. Taser argues that the discovery is relevant to determine the extent to which the Defendants profited from their scheme, to learn if others at Stinger "were involved in or acquiesced in the scheme to their own benefit," and to provide a basis for imposing treble and/or punitive damages.

Taser argues that disgorgement is the remedy authorized for violation of the Lanham Act, 15 U.S.C. § 1117(a). Disgorgement prevents a defendant from being unjustly enriched by conduct which violates the Act. Plaintiff cites cases for the proposition that parties may be jointly and severally liable for engaging in infringing activity. Additionally, 15 U.S.C. § 1117(a)(3) allows the court to award treble damages "for any sum above the amount found as actual damages," where the court finds the infringement is willful, or the plaintiff's reputation has been injured. Taser has also asserted a civil conspiracy claim seeking to recover punitive damages. As such, Defendants' financial records are relevant both to the treble damages and punitive damages claim because they establish both Plaintiff's damages and Defendants' motive. The financial records Plaintiff seeks are needed to help Plaintiff quantify its damages. Plaintiff argues that "this evidence goes to the very heart of the unjust enrichment claim." For the same reason, Plaintiff seeks Defendants' tax returns, as well as documents reflecting particular stock or option transactions. Plaintiff points out that under federal law, tax returns are not privileged and seek an order compelling the Defendants to produce them.

McNulty opposes the motion to compel, asserting that Plaintiff's complaint alleges a violation of 15 U.S.C. § 1125(b), a Lanham Act Unfair Competition claim. The complaint does not allege that

either Gruder or McNulty sold any products in competition with the Plaintiff. McNulty opposes producing the records Plaintiff seeks on several grounds. First, he argues courts have recognized a qualified privilege against disclosure of tax returns in federal cases which requires a party seeking tax return information to establish a compelling need for the information. Second, he points out that the district court dismissed Plaintiff's 10b-5 security fraud claim. Third, he contends there is no authority that allows recovery of profits from stock trades as damages for a violation of 15 U.S.C. § 1125(b) on the theory of unjust enrichment or any other theory. Finally, he argues that much of the information is irrelevant, and that the information concerning stock transactions Plaintiff seeks is otherwise obtainable. Specifically, McNulty has informed counsel that by simply directing an interrogatory to Stinger to identify the name of the clearing house that cleared Stinger's stock transactions, Plaintiff may issue a subpoena *duces tecum* to the clearing house and obtain the stock transaction information it seeks.

McNulty acknowledges that the damages allowed by 15 U.S.C. § 1117(a) apply to Plaintiff's § 1125(a) claim. However, he asserts the statute only authorizes compensatory damages, and that under § 1117(a), a prevailing party is entitled to recover profits from a defendant's infringing sales, or from sales diverted to a defendant in violation of § 1125, actual damages sustained by the Plaintiff, and the cost of action. The damages recovered under 15 U.S.C. § 1117(a) are "subject to the principals of equity," and the courts have held that the legislative history does not support punitive damages. McNulty acknowledges that § 1117(a)(3) gives the district court broad discretion to fashion remedies based on the totality of the circumstances. However, the district court is still limited to awarding compensatory damages for Plaintiff's losses or Defendants' unjust enrichment and is not permitted to award damages that constitute a penalty for Defendants' conduct.

Section 1117 permits a Plaintiff to recover a competitor's profits from sales unlawfully diverted from the Plaintiff on the theory of unjust enrichment. However, there must be a causal nexus between the Defendants' profits and the Plaintiff's injury. McNulty concedes that Defendants' tax returns might become relevant to punitive damages at some time in the future. However, "Plaintiff has a long road to hoe" before it proves a violation of 1125(b), and compelling production of Defendants' tax returns is therefore "speculative, grossly unwarranted and otherwise entirely unsupported by law." McNulty

1  suggests that, if and when Plaintiff proves Defendants are liable for damages for unfair competition, the
2  court could then order Defendants to produce their tax returns in a bifurcated punitive damages
3  proceeding.
4       Defendants Stinger and McNulty filed a joinder which did not advance any additional
5  arguments, and merely joined in McNulty's brief.
6       McNulty filed a supplemental response (Dkt. #87) objecting to commentary in Taser's brief that
7  consists of "three pages of irrelevant calumny and ad hominem arguments" which lack foundation.
8  McNulty acknowledges that he has invoked his Fifth Amendment privilege in responding to Plaintiff's
9  discovery. He asks that the court not grant Taser's request that the court instruct the jury that an
10 adverse inference may be drawn from his refusal to produce the financial discovery sought. He argues
11 that he has only invoked is "Fifth and Fourteenth Amendment rights against entering discovery about
12 his finances which are entirely irrelevant to any issues in this case." McNulty reiterates his arguments
13 that neither Plaintiff's Lanham Act claim nor Nevada statutory claim for trade libel/defamation permit
14 recovery of punitive damages. Thus, McNulty's personal finances are not relevant or discoverable, and
15 no adverse inference can be drawn from his invocation of his rights against self-incrimination.

## DISCUSSION

17      In an Order entered July 22, 2010 (Dkt. #86), the court granted in part and denied in part
18 Plaintiff's Motion to Amend/Correct Complaint (Dkt. #57). The district judge granted the Plaintiff's
19 motion to add an additional claim of relief and clarify the remaining claims, but denied Plaintiff's
20 request to assert a violation of the Securities and Exchange Act of 1934, which claim had previously
21 been dismissed. Plaintiff's Second Amended Complaint (Dkt. #89) was filed July 28, 2010. It asserts
22 claims for securities fraud under 15 U.S.C. § 78j, trade libel/defamation, violation of 15 U.S.C.
23 § 1125(a) under the Lanham Act, abuse of process, deceptive trade practices, and civil conspiracy.
24 Taser seeks temporary and permanent injunctive relief prohibiting McNulty, Gruder and Stinger from
25 issuing press releases and other communications about Taser that contains false and misleading
26 statements. Taser also seeks monetary damages; disgorgement of all unjust enrichment of Stinger,
27 Gruder and/or McNulty; disgorgement of all monetary gains by any or all of the Defendants; exemplary
28 or punitive damages; statutory treble damages; attorneys fees, costs and expenses; and an award of pre-

judgment and post-judgment interest.  In summary, Plaintiff's Second Amended Complaint alleges that the Defendants issued false and misleading press statements which damaged Taser by depressing the value of its stock and causing it to lose tens of millions of dollars in market capital.  Plaintiff also believes the false and misleading press releases were issued to financially benefit Defendants Stinger, Gruder, and McNulty by inflating the stock price of Taser's competitors allowing the Defendants to "dump" or unload shares held in competitors of Taser.  Plaintiff seeks discovery of the Defendants' stock transactions in stock of Stinger or Taser's competitors, and Defendants' tax returns to examine whether the Defendants profited, *i.e.* were unjustly enriched by the conduct complained of in the Second Amended Complaint.  Defendants acknowledge that 15 U.S.C. § 1117(a) specifies the damages recoverable for a violation of 15 U.S.C. § 1125(a) for unfair competition and false advertising.

As a general matter, tax returns are not privileged against disclosure under federal law.  *See St. Regis Paper Co. v. United States,* 368 U.S. 208, 218-19 (1961) (tax returns are generally discoverable under federal law where they are in the possession of the taxpayer and not the government); *Aliotti v. Vessel Senora*, 217 F.R.D. 496, 497 (N.D. Cal. 2003) (*citing Heathman v. District Court*, 503 F.2d 1032, 1035) (9th Cir. 1974); *Playboy Enterprises, Inc. v. Welles,* 60 F.Supp.2d 1050, 1056 (9th Cir. 1999) (stating, "[u]nder federal law, tax returns are not privileged [and] . . . are generally discoverable where necessary in private civil litigation) (*citing Young v. U.S.,* 149 F.R.D. 199, 201 (S.D.Cal. 1993)); *Premium Service Corp. v. Sperry & Hutchinson Co.*, 511 F.2d 225, 229 (9th Cir. 1975).  However, a public policy against unnecessary public disclosure exists, arising from the need to encourage taxpayers to file complete and accurate returns.  *Aliotti,* 217 F.R.D. at 497 (*citing Premium Service*, 511 F.2d at 229).  In light of this policy, the *Aliotti* court concluded tax returns should be only be ordered produced if they are relevant and where there is a compelling need because the information sought is otherwise unavailable.  *Id.* at 498 (*citing Flores v. Albertsons, Inc.*, 2002 WL 1163623 at *3 (C.D. Cal. 2002).

15 U.S.C. § 1117(a) permits disgorgement of any unjust enrichment resulting from a violation of section 1125.  Damages recoverable under § 1117 are compensatory in nature.  *See Southland Sod Farms v. Stover Seed Co.,* 108 F.3d 1134, 1146 (9th Cir. 1997) (stating "[section] 1117 allows the district court to award the plaintiffs any just monetary award so long as it constitutes 'compensation' for the plaintiff's losses or the defendant's unjust enrichment and is not simply a 'penalty' for the

defendant's conduct") (*citing Badger Meter, Inc. v. Grinnell Corp.,* 13 F.3d 1145, 1157 (7th Cir. 1994); *see also Lindy Pen v. Bic Pen,* 982 F.2d 1400, 1407 (9th Cir. 1983) (stating "[d]amages are typically measured by any direct injury which a plaintiff can prove, as well as any lost profits which the plaintiff would have earned but for the infrinement") (*citing Bandag, Inc. v. Al Boser's Tire Stores, Inc.*, 750 F.2d 903, 916 (Fed. Cir. 1984)). In *Lindy,* the Ninth Circuit noted that because actual damages may often be difficult to prove, a court may award damages based upon a defendant's profits on the theory of unjust enrichment. *Id.* (*citing Bandag,* 750 F.2d at 918).

Here, in order to determine Defendants' compensatory damages under section 1117–that is, the profits that Defendants have allegedly obtained in violation of the Lanham Act–Plaintiff is entitled to obtain information regarding the Defendants' financial condition, incomes, expenses, and deductions. Plaintiff has a compelling need for Defendants' tax returns; documents reflecting Defendants' acquisition and disposal of stock in Stinger or any of Taser's other competitors; and documents relating to stock options issued to or exercised by Defendants McNulty, Gruder, and other executives at Stinger because they are likely to contain the most relevant evidence of whether Defendants profited from the conduct alleged in the Complaint. *See Playboy*, 60 F.Supp.2d at 1056. However, in light of the policy against unnecessary public disclosure of financial documents such as tax returns, the documents will be governed by the court's Protective Order (Dkt. #153) entered October 12, 2010, prohibiting, among other things, Plaintiff from using the tax returns and financial documents for any purpose other than this litigation and from publicly disclosing the tax returns and financial documents.

Based upon the foregoing,

**IT IS ORDERED:**

1. Defendants shall produce their tax returns; documents reflecting Defendants' acquisition and disposal of stock in Stinger or any of Taser's other competitors; and documents relating to stock options issued to or exercised by Defendants McNulty, Gruder, and other executives at Stinger between 2006 and 2008 to Plaintiffs within **fourteen days** of the entry of this Order.

2. The tax returns and financial documents produced by Defendants shall be subject the court's Protective Order (Dkt. #153) entered October 12, 2010, and Plaintiff shall not

1 publicly disclose these documents or use them for any purpose unrelated to this
2 litigation.
3 Dated this 12th day of November, 2010.

_____
PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE