1
2
3
4
5
6
7
8
9

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

10   TASER INTERNATIONAL, INC.,

11          Plaintiff,                                    Case No. 2:09-CV-00289-KJD-PAL

12   v.                                                   **ORDER**

13   STINGER SYSTEMS, INC., et al.,

14          Defendants.

15

16          The following motions are pending before the Court:  Defendants' Joint Motion for Partial

17   Summary Judgment on the Issue of Civil Conspiracy (#132) to which Plaintiff filed a Response

18   (#151) and Defendant James F. McNulty, Jr. ("McNulty") filed a Reply (#160); Defendant

19   McNulty's Motion to Reconsider (#166), to which Plaintiff filed a Response (#175); Defendants'

20   Joint Motion for Partial Summary Judgment on the Issue of Abuse of Judicial Process (#170) to

21   which Plaintiff has filed a Response (#176) and Defendants filed a Reply (#181); Defendant

22   McNulty's Motion to Dismiss the Counterclaim for Declaratory Judgment Relief (#201), to which

23   Plaintiff filed a Response (#206).[1]  The Court considers these Motions, their Responses and Replies

24   and rules together herein.

25

26

_____

[1] Defendant filed a Reply (#210), but the Reply was untimely and accordingly, is not considered herein.

I. Background

 The parties to this litigation have a rather extensive history as noted in previous filings. Plaintiff TASER International, Inc. ("Taser"), a publicly-traded company, develops technologies for use by law enforcement, military, private security agencies, and consumers.  It is most well known for its TASER Electronic Control Device ("ECD") product line, which delivers electrical current to a subject, like a "stun gun," causing temporary incapacitation.  Unlike a stun gun, however, Taser's ECDs can fire small probes that attach to a subject and allow a user to temporarily incapacitate a subject from a distance.  Taser has experienced significant success marketing its ECDs.

 Defendant Stinger Systems, Inc. ("Stinger"), also a publicly-traded company, produces a competing ECD.  Defendant Robert Gruder ("Gruder") was Stinger's CEO during the time period pertinent to this litigation.  Defendant James McNulty ("McNulty"), an attorney licensed to practice law in California, provides legal counsel to Stinger and sold patents and molds to Stinger in exchange for shares of Stinger stock.  Taser alleges that, with Gruder's approval, McNulty drafted misleading press releases for Stinger that affected Taser's stock value.  The Complaint alleges that on January 28, 2008, the Securities and Exchange Commission filed a complaint against Stinger and Gruder in the Northern District of Georgia alleging that Stinger and Gruder issued press releases and direct mailings containing material misrepresentations and omissions regarding Stinger's products, and artificially inflating the price of Stinger stock, "causing a spike in trading volume" in violation of 15 U.S.C. § 78j(b).

 Bestex Company, Inc. ("Bestex") is a privately-held company that distributes traditional stun guns, or stun batons, among other things.  McNulty also drafted press releases for Bestex, and has represented Bestex *pro bono* in past litigation.  Among other things, the Complaint alleges that McNulty authored press releases and other documents that were issued by Bestex and by Stinger with Gruder's assistance and/or approval that attempted to, and succeeded in, damaging Taser by manipulating Taser and Stinger's stock prices.  Plaintiff alleges that Taser was damaged by the misleading information when investors "shorted" Taser stock due to the artificially depressed share

1    price, causing investors to be more hesitant to infuse capital into the company.  Plaintiff additionally

2    alleges that McNulty owned shares of Stinger and LEA (a publicly traded company that produces and

3    sells surveillance equipment for use by law enforcement) when he authored the misleading press

4    releases.

5            Plaintiff's Complaint was filed on February 11, 2009, against Stinger, McNulty and Gruder

6    alleging claims for relief regarding: (1) violations of the Securities Exchange Act of 1934, 15 U.S.C.

7    §78j(b); (2) trade libel/defamation; (3) unfair competition in violation of the Lanham Act, 15 U.S.C.

8    § 1125(a); (4) abuse of process; and (5) deceptive trade practices.  On March 25, 2010, this Court

9    dismissed Plaintiff's first claim regarding violations of 15 U.S.C. §78j(b).  Plaintiff filed a Second

10   Amended Complaint on July 28, 2010, adding a claim for relief for civil conspiracy.  On August 2,

11   2010, McNulty filed an Amended Answer and Counterclaim bringing two claims of patent

12   infringement against Plaintiff.  On December 6, 2010, Magistrate Judge Peggy A. Leen ordered that

13   Gruder and McNulty produce documents related to their tax returns and stock transactions during the

14   relevant time period and disclose them to Plaintiff subject to a protective order.

15           Defendants have moved for summary judgment on the abuse of process and civil conspiracy

16   counts.  McNulty has moved for reconsideration of Magistrate Judge Peggy A. Leen's discovery

17   order compelling production of individual tax returns and stock transactions (#164) and has moved to

18   dismiss Plaintiff's counter-counterclaim for declaratory judgment relief.

19   II. Summary Judgment on Civil Conspiracy Claim

20           A. Legal Standard

21           Summary judgment may be granted if the pleadings, depositions, answers to interrogatories,

22   and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any

23   material fact and that the moving party is entitled to a judgment as a matter of law.  See Fed. R. Civ.

24   P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The moving party bears the

25   initial burden of showing the absence of a genuine issue of material fact.  See Celotex, 477 U.S. at

26   323.

3

1        The burden then shifts to the nonmoving party to set forth specific facts demonstrating a

2 genuine factual issue for trial.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,

3 587 (1986); Fed. R. Civ. P. 56(e).  "[U]ncorroborated and self-serving testimony," without more, will

4 not create a "genuine issue" of material fact precluding summary judgment.  Villiarimo v. Aloha

5 Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002).  Summary judgment shall be entered "against a

6 party who fails to make a showing sufficient to establish the existence of an element essential to that

7 party's case, and on which that party will bear the burden of proof at trial."  Celotex, 477 U.S. at 322.

8        B. Analysis

9        Under Nevada law, "[a]n actionable civil conspiracy is a combination of two or more persons

10 who, by some concerted action, intend to accomplish some unlawful objective for the purpose of

11 harming another which results in damage."  Collins v. Union Fed. Sav. & Loan Ass'n, 662 P.2d 610,

12 622 (Nev. 1983).[2]  Plaintiff has identified two or more persons in this case—McNulty, Gruder,

13 Stinger, and Bestex—whose concerted actions gave rise to their allegations.  However, under Nevada

14 law it is also true that "[a]gents and employees of a corporation cannot conspire with their corporate

15 principal or employer."  Id.  The intra-corporate conspiracy doctrine only applies, however, when

16 agents and officers of the corporation "act in their official capacities on behalf of the corporation and

17 not as individuals for their individual advantage."  Collins v. Union Fed. Sav. & Loan Ass'n, 662

18 P.2d 610, 622 (Nev. 1983).

19        Defendants argue that Plaintiff's civil conspiracy claim should fail because Defendants are a

20 corporation and two agents of that corporation, and a corporation and its agents cannot conspire.

21 Plaintiff argues that contrary to Defendants' claims, McNulty was not an "attorney agent" of Stinger.

22 Plaintiff points to evidence that McNulty has never been an employee, in-house counsel, or officer of

23 Stinger, that McNulty has never had authority to control any action of Stinger, and that Stinger and

24

25       [2]  As Defendants note, federal courts have found that similar principles apply in the context of federal claims with conspiracy elements.  See, e.g., Copperweld Corp. v. Independence Tube Corp., 467 U.S. 752, 769 (1984) (holding

26 that "officers or employees of the same firm do not provide the plurality of actors" necessary in a claim under Section 1 of the Sherman Act).

1    McNulty signed an agreement that made clear that McNulty was not being engaged as legal counsel

2    to Stinger.  Plaintiff further argues that McNulty was in fact acting for his individual advantage

3    during the alleged actions, both for the purpose of economic benefit by increasing the value of his

4    stock in Taser's competitors and for the purpose of carrying out a personal vendetta against Taser.

5           In order to preclude a conspiracy charge, however, McNulty need only be an agent of Stinger,

6    not a particular kind of agent such as an employee, officer, or attorney agent.  Plaintiff's own

7    Complaint alleges that "[a]t all times relevant to this Complaint, McNulty was an agent of Stinger

8    authorized to speak and act on behalf of Stinger."  (#89 Second Amended Complaint at ¶9.)  The

9    Complaint goes on to describe multiple specific instances in which McNulty acted as an agent of

10   Stinger, including multiple instances in which McNulty wrote press releases for Stinger.  Since

11   Plaintiffs have conceded that McNulty was an agent of Stinger, there is no dispute about this fact.

12   Plaintiff cannot now claim, for purposes of avoiding the intra-corporate conspiracy preclusion, that

13   McNulty was not in fact an agent of Stinger.  See, e.g., Selman v. American Sports Underwriters,

14   Inc., 697 F.Supp. 225, 238 (W.D.Va. 1988) (noting that it is inconsistent for plaintiffs to argue for

15   one purpose that a defendant was an agent of a corporation defendant and then to argue for purposes

16   of a conspiracy claim that there was no agency relationship); James Lockhart, Cause of Action for

17   Civil Conspiracy, § 6 (1994), available at 4 COA2d 517 (Westlaw) (stating that it is inconsistent for

18   a plaintiff to "argue on the one hand that individual officers and employees of a corporation were

19   acting solely as agents of the corporation . . . and to argue on the other hand that such persons were

20   actually dealing with the corporation as individuals, as must be done in order to support a conspiracy

21   claim").

22          As for Gruder, Plaintiff similarly concedes that he was an officer and agent of Stinger as

23   alleged in the Complaint.  The claim for civil conspiracy against Gruder fails as a matter of law.

24          Plaintiff also argues that Defendants' Motion for Summary Judgment should fail because it

25   does not address the allegation of conspiracy between McNulty and Bestex.  But Bestex is not a party

26   to this case, and the allegations of civil conspiracy laid out in Count Five of the Complaint describe a

1   conspiracy between Stinger, Gruder, and McNulty without mentioning Bestex.  While the Complaint

2   does mention press releases written by McNulty and issued by Bestex, it does not contain well-pled

3   allegations that Bestex and McNulty conspired together, nor does it ever describe the relationship

4   between Bestex and McNulty as a conspiracy, as Plaintiff claims.[3]

5       Because Plaintiff has conceded the agency relationship of the alleged conspirators, this Court

6   finds that Defendants are entitled to judgment as a matter of law on the claim of civil conspiracy as

7   laid out in the Complaint.

8   III. Motion to Reconsider Magistrate Judge's Order

9       A. Legal Standard

10      According to 28 U.S.C. § 636(b)(1)(A), this Court "may reconsider any pretrial matter"

11  handled by the magistrate judge, but only if the magistrate judge's action "is clearly erroneous or

12  contrary to law."  See also Fed. R. Civ. P. 72(a); LR IB 3-1.  "The clear error standard means that the

13  district court can overturn the magistrate judge's ruling only if the district court is left with the

14  definite and firm conviction that a mistake has been made."  Weeks v. Samsung Heavy Indus. Co.

15  Ltd., 126 F.3d 926, 943 (7th Cir. 1997).

16      B. Analysis

17      In Order #164, Magistrate Judge Peggy A. Leen ordered Defendants to produce to Taser, tax

18  returns and documents related to stock transactions.   In her Order, Judge Leen adequately discussed

19  the standard for disclosure of tax returns and accurately determined that they should be ordered

20  produced only when relevance and a compelling need can be demonstrated.  See Aliotti v. Vessel

21  Senora, 217 F.R.D. 496 (N.D. Cal. 2003).  The Order notes Ninth Circuit precedent that clearly states

22  that a court may order compensatory damages under 15 U.S.C. § 1117(a) for unjust enrichment

23  resulting from a violation of 15 U.S.C. § 1125(a).  See Southland Sod Farms v. Stover Seed Co., 108

24  _____

25  [3]The Complaint does allege that "Through the use of false and misleading press releases, authored by McNulty and issued by Bestex ... defendants conspired, attempted, and succeeded in damaging TASER and in manipulating the

26  stock prices of TASER and Stinger." (#89 Second Amended Complaint ¶38) While this allegation mentions Bestex, the only individuals alleged to have "conspired" are "defendants," and Bestex is not a defendant in this case.

1   F.3d 1134, 1146 (9th Cir. 1997); Lindy Pen Co. v. Bic Pen Corp., 982 F.2d 1400, 1411 (9th Cir.

2   1993).  Judge Leen therefore ordered Defendants to disclose tax return and stock information that

3   would be necessary to determine damages potentially arising under Plaintiff's Lanham Act claims.

4   Judge Leen's ruling was based on an accurate analysis of Ninth Circuit precedent and is not "clearly

5   erroneous or contrary to law."  McNulty's Motion to Reconsider is therefore denied.

6   IV. Motion for Summary Judgement on Abuse of Process Claim

7          Defendants move for summary judgment on Plaintiff's abuse of process claim which is based

8   on the filing of an allegedly frivolous lawsuit in the U.S. District Court for the District of Arizona.

9   The legal standard for this motion is discussed above in reference to the Motion for Partial Summary

10  Judgment on the Issue of Civil Conspiracy.  Defendants argue that as a matter of law, the improper

11  filing of a lawsuit cannot serve as a ground for an abuse of process claim.

12         Under applicable Arizona law, "the gist of the tort is the misuse of process, justified in itself,

13  for an end other than that which it was designed to accomplish."  Nienstedt v. Wetzel, 651 P.2d 876,

14  881 (Ariz. Ct. App. 1982).  A party is not liable for abuse of process for "commencing an action or

15  causing process to issue without justification," as Plaintiff has alleged here.  Morn v. Phoenix, 730

16  P.2d 873, 876 (Ariz. Ct. App. 1986) (quoting Prosser & Keeton, Law of Torts 897 (5th ed. 1984));

17  see also Blue Goose Growers, Inc. v. Yuma Groves, Inc., 641 F.2d 695, 697 (9th Cir. 1981).  In this

18  respect the abuse of process tort differs from the tort of malicious prosecution.  Joseph v. Markovitz,

19  551 P.2d 571, 574 (Ariz. Ct. App. 1976).  "The gravamen of [abuse of process] is not the

20  wrongfulness of the prosecution, but some extortionate perversion of lawfully initiated process to

21  illegitimate ends."  Heck v. Humphrey, 512 U.S. 477, 486 (U.S. 1994).

22         Plaintiff's arguments to the contrary are based on a misreading of Crackel v. Allstate Ins. Co.,

23  92 P.3d 882 (Ariz. Ct. App. 2004).  Plaintiff asserts that since Crackel cited approvingly from a

24  Georgia case, Torok v. Yost, 335 S.E.2d 419, 421 (Ga. Ct. App. 1985), which allowed an abuse of

25  process allegation based on an inappropriate claim, Crackel's broad statements allowing abuse of

26  process claims based on "the entire range of procedures incident to the litigation process" should be

1   read to include the initial filing of a case.  Crackel, 92 P.3d at 887.  As the Crackel Court recognized,

2   however, Torok allowed an abuse of process allegation based on an inappropriate counterclaim in an

3   already-initiated lawsuit, and includes an explicit discussion of the distinction between abuse of

4   process and malicious prosecution (or "malicious use").  335 S.E.2d at 421.  Crackel and its citation

5   of Torok therefore accord fully with the Arizona cases already discussed and did nothing to alter the

6   clear precedent on abuse of process only applying to already-filed lawsuits.  Since Plaintiff's abuse of

7   process allegation accuses Defendants of the wrongful filing of an illegitimate lawsuit, this Court

8   must find for the Defendants on the abuse of process claim as a matter of law.

9   V. Motion to Dismiss Counterclaim for Declaratory Judgment Relief

10          A. Legal Standard

11          Pursuant to Fed. R. Civ. P. 12(b)(6), a court may dismiss a Plaintiff's complaint for "failure to

12   state a claim upon which relief can be granted."  A properly pled complaint must provide "a short

13   and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P.

14   8(a)(2); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  While Rule 8 does not require

15   detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation

16   of the elements of a cause of action."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing

17   Papasan v. Allain, 478 U.S. 265, 286 (1986)).  "Factual allegations must be enough to rise above the

18   speculative level."  Twombly, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint

19   must contain sufficient factual matter to "state a claim to relief that is plausible on its face."  Iqbal,

20   129 S. Ct. at 1949 (internal citation omitted).

21          In Iqbal, the Supreme Court recently clarified the two-step approach district courts are to

22   apply when considering motions to dismiss. First, the Court must accept as true all well-pled factual

23   allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth.

24   Id. at 1950.  Mere recitals of the elements of a cause of action, supported only by conclusory

25   statements, do not suffice.  Id. at 1949.  Second, the Court must consider whether the factual

26   allegations in the complaint allege a plausible claim for relief.  Id. at 1950.  A claim is facially

1  plausible when the Plaintiff's complaint alleges facts that allow the court to draw a reasonable

2  inference that the defendant is liable for the alleged misconduct.  Id. at 1949. Where the complaint

3  does not permit the court to infer more than the mere possibility of misconduct, the complaint has

4  "alleged—but not shown—that the pleader is entitled to relief."  Id. (internal quotation marks

5  omitted).  When the claims in a complaint have not crossed the line from conceivable to plausible,

6  Plaintiff's complaint must be dismissed.  Twombly, 550 U.S. at 570.

7       B. Analysis

8       McNulty moves to dismiss Plaintiff's counterclaim for declaratory judgment relief, arguing

9  that as a matter of law Plaintiff cannot ask for declaratory judgment relief on issues that Plaintiff has

10  already addressed as affirmative defenses.  The only case to which McNulty cites, Albie's Foods v.

11  Menusaver, Inc., 170 F. Supp. 2d 736, 738 ( E.D. Mich. 2001), involves a court declining to exercise

12  jurisdiction over a declaratory judgment case in light of a separate case based on a coercive remedy

13  that was filed in a different federal court, since "concurrent litigation in federal courts is a waste of

14  judicial resources."  Both claims are combined into the same case in this instance, however, and

15  McNulty does not cite any authority to support his broader assertion that affirmative defenses and

16  declaratory judgment relief on the same subject are incompatible, apart from vague references to the

17  intent of Congress in enacting 28 U.S.C. § 2201.  As Plaintiff notes, however, counterclaims alleging

18  that a patent is invalid and unenforceable are "typical" in federal patent cases.  See, e.g., Akzona, Inc.

19  v. E. I. Du Pont de Nemours & Co., 662 F. Supp. 603, 619 (D. Del. 1987).

20       As McNulty points out, this Court may exercise discretion in deciding how to dispose of a

21  claim for a declaratory remedy.  This Court finds nothing amiss with Plaintiff's declaratory judgment

22  relief claim, and since McNulty provides no authority to the contrary, his Motion to Dismiss fails.

23  VI. Conclusion

24       Accordingly, **IT IS HEREBY ORDERED** that Defendants' Joint Motion for Partial

25  Summary Judgment on the Issue of Civil Conspiracy (#132) is **GRANTED**.

26

9

1    **IT IS FURTHER ORDERED** that Defendant McNulty's Motion to Reconsider (#166) is

2  **DENIED**.

3    **IT IS FURTHER ORDERED** that Defendants' Join Motion for Partial Summary Judgment

4  on the Issue of Abuse of Judicial Process (#170) is **GRANTED**.

5    **IT IS FURTHER ORDERED** that Defendant McNulty's Motion to Dismiss the

6  Counterclaim for Declaratory Judgment Relief (#201) is **DENIED**.

7    DATED: July 28, 2011.

8

9

10    _____
      Kent J. Dawson
11    United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26