1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

9   TASER INTERNATIONAL, INC.,

10                                    Plaintiff,

11        v.

12   STINGER SYSTEMS, *et al.*,

13                                    Defendants.

Case No. 2:09-cv-289-MMD-PAL

ORDER

(Defendants' Joint Motion for Partial
Summary Judgment – dkt. no. 217;
Taser's Motion for Rule 56(d) Relief
– dkt. no. 223)

14

15        Before this Court are Defendants' Joint Motion for Partial Summary Judgment

16   (dkt. no. 217) and Plaintiff's Motion for Rule 56(d) Relief (dkt. no. 223).

17   **I.        BACKGROUND**

18        **A.        Parties**

19        Plaintiff TASER International (hereinafter "TASER"), a publicly-traded company,

20   develops numerous technologies for use by law enforcement, military, private security

21   agencies, and consumers. It is most well-known for its TASER Electronic Control Device

22   ("ECD") product line, a weapon that delivers electrical current to a subject, like a "stun

23   gun," causing temporary incapacitation. Unlike a stun gun, however, TASER's ECDs can

24   fire small probes that attach to a subject and allow a user to temporarily incapacitate a

25   subject from a distance.   TASER has experienced significant success marketing its

26   ECDs.

27        Defendant Stinger Systems ("Stinger") is a former publically traded company that

28   has since sold its assets to Karbon Arms, Inc.  It produced a competing ECD.  Defendant

Robert Gruder ("Gruder") was Stinger's CEO during the time period pertinent to this litigation.  Defendant James F. McNulty, Jr. ("McNulty"), an attorney licensed to practice law in California, sold patents and molds to Stinger in exchange for shares of Stinger stock.  TASER alleges that with Gruder's approval, McNulty drafted misleading press releases for Stinger that negatively affected TASER's stock value.

Bestex Company ("Bestex") is a privately held company that distributes traditional stun guns, or stun batons, in addition to other "self-protection products."  Yong Su Park owns Bestex.  Defendant McNulty also allegedly drafted press releases for Bestex, and has represented and counseled Bestex *pro bono* in previous matters.  Plaintiff's Second Amended Complaint alleges that McNulty authored press releases and other documents issued by Stinger and Bestex with Gruder's assistance and/or approval that attempted to, and succeeded in, damaging TASER by manipulating TASER and Stinger's stock prices.  Plaintiff alleges that TASER was damaged by the misleading information when investors "shorted" TASER stock due to the artificially depressed share price, causing investors to be more hesitant to infuse capital into the company.  Plaintiff additionally alleges that McNulty owned shares in Stinger and Law Enforcement Associates ("LEA"), a publically traded company that produces and sells surveillance equipment for law enforcement agencies, when he authored the misleading press releases.

**B.    Facts**

TASER's case revolves around the drafting and publishing of a series of allegedly misleading and/or false press releases by Bestex and the Defendants that TASER claims were designed to devalue its stock and harm its reputation.  TASER alleges that McNulty was a central player in this scheme, creating and drafting the releases and approaching LEA about partnering to engage in similar conduct.

1.    May 21, 2007 release (concerning Arizona litigation)

On January 5, 2007, TASER brought an action in the District of Arizona against Stinger claiming patent infringement, patent false marking, and Lanham Act false advertising claims ("Arizona litigation").  In addition to the patent claims, TASER brought

1   Lanham Act false advertising claims alleging that various misleading and/or false

2   product-to-product comparisons were made on Stinger's website and communicated by

3   a Stinger agent to a law enforcement official.  Neither Gruder nor McNulty were parties

4   to that lawsuit, but McNulty served as Stinger's counsel at the time.  On May 20, 2009,

5   the parties filed a "Stipulation to Dismiss Claims Under the Lanham Act" wherein they

6   voluntarily dismissed the Lanham Act claims for the purposes of "streamlining" the

7   litigation, making note that "there has been no resolution of any factual or legal issue on

8   the merits, and the dismissal of those claims should not be construed as an adjudication

9   against or in favor of either party."  (*See* dkt. no. 217-C.) The Court signed the

10  stipulation, and included that same language.  (Dkt. no. 217-D.)  The case ended in a

11  finding that Stinger infringed one of TASER's patents resulting in a permanent injunction

12  enjoining Stinger from producing an infringing ECD gun.  (*See* dkt. no. 217-E.)  Final

13  judgment was entered on August 27, 2010.  (*Id.*)

14      TASER alleges that a press release published by Stinger involving both McNulty

15  and Gruder misled consumers about the nature of the Arizona litigation.  On May 21,

16  2007, Judge Murguia, the presiding judge of the Arizona litigation, entered a protective

17  order in the case.  On May 31, 2007, Stinger issued an allegedly misleading release

18  concerning this protective order that TASER claims caused a $40,000,000 loss in

19  TASER market capital resulting from a drop in stock price.

20              2.      January 9-11, 2008 releases (concerning patent reexamination)

21      TASER further alleges that a series of press releases published in January 2008

22  similarly damaged TASER.   On January 9, 2008, Stinger issued a press release

23  concerning documents it filed with the United States Patent and Trademark Office to

24  have one of Taser's patents reexamined.  TASER alleges the January 9 release was

25  misleading.  On January 10, 2008, Stinger issued another allegedly misleading release

26  concerning an independent firm's analysis of the patent reexamination documents

27  publicized in the January 9, 2008, release.  On January 11, 2008, Stinger issued a third

28  release in which it commented on the controversy in allegedly misleading ways.

3

1
2
    3.    April 24, 2008, press release and September 6, 2008, email
          (concerning Stinger lawsuit)

3       On April 28, 2008, Stinger filed a lawsuit against TASER in the District of Arizona

4   that TASER alleges was vexatious and served as the basis for other misleading press

5   releases.  *See Stinger Systems, Inc. v. TASER Int'l*, No. 08-747 (D. Ariz. filed Apr. 28,

6   2008) ("Stinger lawsuit").  The lawsuit alleged false advertising, unfair competition, and

7   injurious falsehood.  The complaint concerned TASER's circulation of a study conducted

8   by the National Institute of Justice ("NIJ"), the research, development, and evaluation

9   arm of the United States Department of Justice.  Stinger accused TASER of misleading

10  consumers about the nature of the report.  The lawsuit was filed on April 18, 2008, but

11  TASER alleges that Stinger waited to announce the suit until April 24, 2008, the same

12  day that TASER released its quarterly earnings.  According to TASER, the April 24,

13  2008, press release announcing the lawsuit was misleading because the suit itself was

14  meritless and because Stinger had no intention of prosecuting the suit.  Stinger never

15  served TASER, and voluntarily dismissed the lawsuit after the service cutoff date passed

16  and after an order to show cause was issued against Stinger.  TASER alleges that the

17  Stinger lawsuit was intended merely to facilitate the misleading press release.

18      TASER also alleges that a September 6, 2008, email sent by Stinger Regional

19  Sales Director Kevin Scholz, entitled "Stinger Sues Taser," included misleading text

20  concerning the Stinger lawsuit and a misleading attachment (hereinafter "the Stinger

21  packet").  TASER further alleges that Stinger issued a press release on February 21,

22  2008, before the filing of the Stinger lawsuit that included similar misleading statements

23  concerning the NIJ report.

24      4.    January 17, 2008, press release (concerning Bestex)

25      TASER alleges that in January 2007, McNulty approached LEA President Paul

26  Feldman ("Feldman") on behalf of Bestex to propose a sham agreement between Bestex

27  and LEA to facilitate the publication of press releases that would drive up LEA stock and

28  hurt TASER's value.  TASER provided transcripts of recorded conversations between

1  Feldman and McNulty describing this proposal, including how McNulty planned to use
2  strategic lawsuits to damage TASER and its stock.  On February 9, 2007, LEA wrote to
3  McNulty rebuffing McNulty and refusing to enter into the arrangement.

4  Almost a year later on January 17, 2008, TASER alleges that McNulty issued a
5  press release on behalf of Bestex that TASER claims misled the public into believing that
6  Bestex and LEA had discussed and entered into an agreement.  TASER alleges that
7  McNulty admitted authoring this release to try to push up LEA stock.

8  5.  Other press releases

9  TASER alleges that a number of other similarly misleading press releases were
10  issued by Defendants.  These were published on June 9, 2008, and October 26, 2009,
11  and included allegedly misleading information comparing Stinger products with TASER
12  products in a manner intended to injure and devalue TASER.

13  **C.  This Action**

14  TASER filed its original Complaint in this case on February 11, 2009, against
15  Stinger, McNulty, and Gruder, alleging 1) violations of the Securities Exchange Act of
16  1932, 15 U.S.C. § 78j(b); 2) trade libel/defamation; 3) unfair competition in violation of
17  the Lanham Act, 15 U.S.C. § 1125(a); 4) abuse of process; and 5) deceptive trade
18  practices.  Upon Defendants' motion, this Court dismissed the Securities Exchange Act
19  claim.  TASER filed its Second Amended Complaint on July 28, 2010, alleging all but
20  one of the same claims, replacing the Securities Exchange Act claim with a civil
21  conspiracy claim.  This Court granted summary judgment to Defendants on the abuse of
22  process and civil conspiracy claims.  (*See* Dkt. no. 213.)

23  **II.  LEGAL STANDARD**

24  Although motions for partial summary judgment are common, Rule 56 of the
25  Federal Rules of Civil Procedure, which governs summary judgment, does not contain
26  an explicit procedure entitled "partial summary judgment." As with a motion under Rule
27  56(c), partial summary judgment is proper "if the pleadings, depositions, answers to
28  interrogatories, and admissions on file, together with the affidavits, if any, show that

1  there is no genuine issue as to any material fact and that the moving party is entitled to

2  judgment as a matter of law." Fed. R. Civ. P. 56(c).

3      The purpose of summary judgment is to avoid unnecessary trials when there is no

4  dispute as to the facts before the court. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18

5  F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is appropriate when the pleadings,

6  the discovery and disclosure materials on file, and any affidavits "show there is no

7  genuine issue as to any material fact and that the movant is entitled to judgment as a

8  matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). An issue is "genuine"

9  if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for

10 the nonmoving party and a dispute is "material" if it could affect the outcome of the suit

11 under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

12 Where reasonable minds could differ on the material facts at issue, however, summary

13 judgment is not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir.

14 1995), *cert. denied*, 516 U.S. 1171 (1996). "The amount of evidence necessary to raise

15 a genuine issue of material fact is enough 'to require a jury or judge to resolve the

16 parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897,

17 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288-89

18 (1968)). In evaluating a summary judgment motion, a court views all facts and draws all

19 inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v.

20 Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

21      The moving party bears the burden of showing that there are no genuine issues

22 of material fact. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). "In

23 order to carry its burden of production, the moving party must either produce evidence

24 negating an essential element of the nonmoving party's claim or defense or show that

25 the nonmoving party does not have enough evidence of an essential element to carry its

26 ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210

27 F.3d 1099, 1102 (9th Cir. 2000). Once the moving party satisfies Rule 56's

28 requirements, the burden shifts to the party resisting the motion to "set forth specific

1    facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.  The

2    nonmoving party "may not rely on denials in the pleadings but must produce specific

3    evidence, through affidavits or admissible discovery material, to show that the dispute

4    exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do

5    more than simply show that there is some metaphysical doubt as to the material facts."

6    *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted).  "The

7    mere existence of a scintilla of evidence in support of the plaintiff's position will be

8    insufficient." *Anderson*, 477 U.S. at 252.

9    III.    **DISCUSSION**

10          A.    **Joint Motion for Partial Summary Judgment (dkt. no. 217)**

11          Defendants' Joint Motion seeks judgment on the following six[1] issues:

12                1.  TASER's standing to sue for violation of 15 U.S.C. § 78j

13                2.  Claims preclusion

14                3.  Judicial estoppel

15                4.  McNulty's joint and several liability for violations of 28 U.S.C. § 1125(a)

16                    by Stinger

17                5.  TASER's failure to establish Lanham Act violation for Bestex's January

18                    17, 2008, press release

19                6.  TASER's failure to establish Lanham Act violation for Stinger's April 24,

20                    2008, press release and September 6, 2008, email and attachment

21    The Court will address each issue in turn below.

22                1.    TASER's 15 U.S.C. § 78j standing

23          Defendants argue that TASER lacks standing to bring a 15 U.S.C. § 78j securities

24    fraud action.  This Court previously dismissed this count on March 25, 2012.  (*See* dkt.

25    no. 36.)  On June 1, 2010, TASER sought to include it again in its Motion to Amend, (dkt.

26    _____

27          [1] Defendants initially sought partial summary judgment as to a seventh issue –
     TASER's standing to sue for deceptive trade practices – but withdrew their request in
28    their Reply.  The Court will not address it.

1  no. 57), and the Court rebuffed TASER again for attempting to bring it.  (*See* dkt. no. 86
2  at 2: 8-10).  After filing its Second Amended Complaint, TASER erroneously retained in
3  the document caption a reference to this original securities fraud claim.  Both parties
4  agree that no securities fraud claim exists per this Court's order, so summary judgment
5  as to this claim is denied as moot.[2]

6                    2.    Claim preclusion

7         Defendants argue that TASER's trade libel and deceptive trade practices claims
8  are precluded under the doctrine of claim preclusion.  On May 20, 2009, Stinger and
9  TASER filed a "Stipulation to Dismiss Claims Under the Lanham Act" in the Arizona
10  litigation wherein they voluntary dismissed Lanham act claims for the purposes of
11  "streamlining" the litigation, making note that "there has been no resolution of any factual
12  or legal issue on the merits, and the dismissal of those claims should not be construed
13  as an adjudication against or in favor of either party."  (*See* Dkt. no. 217-C.)  Defendants
14  argue that TASER's 2007 suit filed in the District of Arizona precludes this suit by virtue
15  of the stipulated agreement to dismiss the claims.  TASER counters by arguing that no
16  identity of the claims exists and that no final judgment on the merits was entered in the
17  previous Arizona case.

18        "The doctrine of res judicata provides that a final judgment on the merits bars
19  further claims by parties or their privies based on the same cause of action."  *In re*
20  *Schimmels*, 127 F.3d 875, 881 (9th Cir. 1997) (quoting *Montana v. United States*, 440
21  U.S. 147, 153 (1979)).  Claim preclusion has three elements: 1) an identity of the claims,
22  2) a final judgment on the merits, and 3) privity between the parties.  *Headwaters, Inc. v.*
23  *U.S. Forest Serv.*, 399 F.3d 1047, 1052 (9th Cir. 2005).

24  ///

25  ///

26  ─────────────────────

27        [2] Defendants seek summary judgment on this issue rather than an order denying
    the claim as moot, yet no § 78j claim has survived for this Court to adjudicate at the
28  summary judgment stage.  The proper course of action is to deny summary judgment as
    moot for the claim's erroneous inclusion in the Second Amended Complaint's caption.

1

*a.   Identity of claims*

2   In determining whether there is an identity of claims, the Ninth Circuit considers

3   four factors:

> Whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts. The last of these criteria is the most important.

8   *Headwaters*, 399 F.3d at 1052 (quoting *Constantini v. Trans World Airlines*, 681 F.2d

9   1199, 1201-02 (9th Cir. 1982); *see also U.S. v. Tohono O'Odham Nation*, ___ U.S. ___,

10   131 S. Ct. 1723, 1730 (2011) ("The now-accepted test in preclusion law for determining

11   whether two suits involve the same claim or cause of action depends on *factual overlap*")

12   (emphasis added).

13   There exists no identity of facts between the Arizona litigation and this one.  The

14   Arizona case arose from alleged patent infringement on three patents, false advertising

15   under 15 U.S.C. § 1125(a) relating to product-to-product comparisons made by Stinger

16   and Stinger's agent, and patent false marketing.  The facts that gave rise to this litigation

17   revolve around a series of press releases published between May 31, 2007, and

18   October 26, 2009, actions that occurred after the filing of the Arizona lawsuit.[3]  The case

19   before this Court concerns representations made by Defendants in a series of press

20   releases that were not the subject of the prior suits. There is no overlapping

21   "transactional nucleus of facts," *see Headwater*, 399 F.3d at 1052, and the differing

22   types of claims preclude a finding of claim preclusion.  TASER does not bring any patent

23   ///

24   ///

_____

25

26   [3] Gruder's declaration attached to the Joint Motion suggests that the settlement in the Arizona litigation concerned claims revolving around the same press releases that

27   are the subject of this litigation.  The complaint in the record demonstrates that the press releases were not the subject of the Arizona litigation.  Defendants have not provided

28   undisputed evidence that the press releases became an issue as the Arizona litigation proceeded.

1   infringement claims.  TASER here alleges unfair competition under § 1125(a)(1)(A), but

2   alleged false advertising under § 1125(a)(1)(B) in the Arizona litigation.[4]

3       Putting aside the obviously different patent infringement issues in the Arizona

4   case, it is true that in both suits TASER fundamentally complains about unfair business

5   practices.  But such a general commonality between the suits is not enough to preclude

6   TASER from bringing an additional suit, for that would, as TASER rightly points out,

7   secure in Defendants an indefinite right into the future to engage in myriad different

8   forms of unfair business practices and Lanham Act violations.  That surely cannot be the

9   law.

10      For these reasons, no identity of the claims exists.

11                  b.     Final judgment on the merits

12      In addition, TASER argues there was no final judgment on the merits,

13   notwithstanding Defendants' citation to *Headwaters* for the proposition that a stipulated

14   dismissal with prejudice may preclude a party from reasserting the same claims in a

15   subsequent action in the same court.   Preclusion requires that the prior judgment

16   "actually passes directly on the substance of a particular claim."   *Semtec Int'l, Inc. v.*

17   *Lockheed Martin Corp.*, 531 U.S. 497, 501-02 (2001).

18      Defendants' argument is inapposite for the simple reason that it overlooks the

19   plain, unambiguous language in the settlement agreement that the agreement not have

20   claim preclusive effect.  *See U.S. ex rel. Barajas v. Northrop Corp.*, 147 F.3d 905, 911

21   (9th Cir. 1998) ("A settlement can limit the scope of the preclusive effect of a dismissal

22   with prejudice by its terms.").  The agreement notes that both parties maintain the merits

23   ///

24   ///

25   _____

26   [4] Defendant Gruder in his declaration says that the settlement negotiations in the
    Arizona litigation concerned Lanham Act unfair competition claims (as opposed to false
27   advertising claims).  This characterization conflicts with the record before this Court.
    Specifically, TASER's Arizona complaint labeled the relevant Counts 4 and 5 as false
28   advertising claims, whereas the complaint in this case is captioned as bringing unfair
    competition claims.

of their respective claims, but "wish to streamline the litigation." (*See d*kt. no. 217-C at

¶¶ 4-5.)  The settlement concludes with following paragraph:

> TASER and Stinger stipulate and agree that although the Lanham Act claims in the case should be dismissed with prejudice, there has been no resolution of any factual or legal issue on the merits, and the dismissal of those claims should not be construed as an adjudication against or in favor of either party.

(*Id.* at ¶ 8.)  This paragraph is expressly intended to preclude the application of res judicata, since the parties clearly intended that no adjudication on the merits (and thus, no final judgment) was made.  Defendants argue in their Reply that such language is standard and included solely to indicate that neither party admits culpability.  Were that argument tenable, then paragraphs 4 and 5 would be rendered superfluous.  *See, e.g.*, *ELM Retirement Center, LP v. Callaway*, 246 P.3d 938, 942 (Ariz. Ct. App. 2010) ("In interpreting a contract, we do not construe one term in a way that renders another meaningless.").

Indeed, Defendants cite to *Epic Metals Corp. v. H. H. Robertson Co.*, 870 F.2d 1574, 1576 (Fed. Cir. 1989) for the proposition that parties must "expressly reserve in a consent judgment the right to relitigate some or all issues that would otherwise have been barred," which is precisely what happened here.  This would be an altogether different case without this express language, and Defendants might then stand on a different footing in making their preclusion argument.  Defendants also rely on *Reyn's Pasta Bella LLV v. Visa USA, Inc.*, 442 F.3d 741, 748 (9th Cir. 2006) for the rule that a court's approval of a settlement constitutes a final judgment on the merits for claim preclusion purposes even as to untried factually related claims that the court has not actually passed upon.  *Reyn's Pasta Bella* is of no use to Defendants, however, since the case involved the very same set of allegedly unlawful financial conduct that gave rise to both cases.  Here, as previously explained, the factual predicates are altogether different, and cannot be the basis for the application of preclusion doctrine.

///

1          *c.       Accord and satisfaction*

2          Defendants further argue that the stipulated dismissal constituted an accord and

3  satisfaction that serves to clear any obligations and liabilities between the two parties.

4          To establish an accord and satisfaction, Defendants must demonstrate four

5  elements: "(1) a proper subject matter; (2) competent parties; (3) an assent or meeting of

6  the minds of the parties; and (4) consideration." *Flagel v. Sw. Clinical Physiatrists, P.C.*,

7  755 P.2d 1184, 1188 (Ariz. 1988).

8          Even assuming that the other three requirements of a proper accord and

9  satisfaction are met, the inclusion of the express language discussed above destroys

10 whatever claim Defendants have to the existence of a meeting of the minds that conflicts

11 with this express language.  *See, e.g.*, *Vinnell Corp. v. State ex rel. Bob Skousen*

12 *Contractor, Inc.*, 505 P.2d 547, 549 (Ariz. 1973) (a court "will not disregard [the] plain

13 and definite meaning [of a contract] and substitute another that is less convincing");

14 *Ringle v. Bruton*, 86 P.3d 1032, 1039 (Nev. 2004) ("[W]hen a contract is clear,

15 unambiguous, and complete, its terms must be given their plain meaning and the

16 contract must be enforced as written; the court may not admit any other evidence of the

17 parties' intent because the contract expresses their intent").  No accord and satisfaction

18 existed since the express language of the settlement forecloses the application of claim

19 preclusion.

20         3.       Judicial estoppel

21         Defendants argue that TASER is estopped from claiming injuries from the

22 February 21, 2008, release, since TASER claimed in the Arizona litigation that the losses

23 it sought in this suit were the exclusive result of alleged patent infringement and

24 damages from the January 9, 10, and 11, 2008 press releases.  TASER counters by

25 noting that Defendants' argument is based on an expert damages report filed in the

26 Arizona litigation which was not adopted by the Court and which did not represent

27 TASER's position.

28 ///

12

"Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position." *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001).  In determining whether to apply the doctrine of judicial estoppel, a court may apply three factors outlined by the Supreme Court in *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001).   First, "a party's later position must be 'clearly inconsistent' with its earlier position." *Id.* at 750.   Second, courts often inquire whether the party achieved success in the prior proceeding, as "judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled." *Id.* (internal quotations and citations omitted).   Third, courts consider whether, if not estopped, "the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the other party." *Id.* at 751.   The Ninth Circuit has restricted judicial estoppel to cases where the court relied on the party's previous inconsistent position.  *See Hamilton*, 270 F.3d at 783.

First, it is not clear that TASER's position on damages in the Arizona lawsuit is clearly inconsistent with the case at bar.   Defendants' arguments are based on the expert damages report which was not adopted by the Court, and which did not represent any position adopted by TASER.   While the report offered its analysis of potential damages incurred by TASER on the three days in which some of the challenged press releases were published, the existence of this expert report does not conflict with any positions taken by TASER here.   As explained in Part III.A.2, not only are the claims in the two cases different, the factual predicates that underlie the claims are different.   The Arizona litigation involved patent infringement and false advertising on a website, while this suit involves allegedly misleading press releases.   These are not the same factual predicates, so failure to bring a claim in one does not estop TASER from bringing a claim for the other.   For this reason, Defendants' citation to *New Hampshire* is unavailing. *New Hampshire* involved the application of judicial estoppel on a water boundary case that involved fundamentally the same dispute as the original case.   The state of New

1    Hampshire sought to redefine its boundaries as against Maine, directly contrary to a prior
2    settlement agreement between the two states in place over twenty years ago.  Here, the
3    cases are fundamentally distinct, involve different sets of challenged acts, and involve
4    different legal rights.

5        Second, TASER would not retain an unfair advantage by pursuing its claims here.
6    The Arizona litigation concerned patent infringement and false advertising, and this
7    litigation concerns unfair competition.  Failing to allow TASER to present evidence in
8    support of the latter would prejudice TASER's right to pursue civil violations against
9    Defendants independent of its prior patent victory.  For these reasons, it is inappropriate
10   to apply judicial estoppel to bar TASER from pursuing its suit.

11                    4.    McNulty's joint and several liability

12       Defendants argue that McNulty is not jointly and severally liable for any 1125(a)
13   violations on the part of Stinger's, but they again misconstrue the law.  As discussed
14   above, "a corporate officer's active participation in infringing activity is sufficient to
15   subject him or her to joint and several liability" for Lanham Act violations.  *See Hair*
16   *Assocs.*, 987 F. Supp. at 590-91; *see, e.g.*, *Transgo, Inc. v. Ajac Transmission Parts*
17   *Corp.,* 768 F.2d 1001, 1023 (9th Cir. 1985) (affirming award of joint and several liability),
18   *cert. denied,* 474 U.S. 1059 (1986); *PepsiCo, Inc. v. IRIE Motivations, Inc.*, 2008 WL
19   5732153, at *1 (C.D. Cal. Dec. 29, 2008) (awarding joint and several liability for Lanham
20   Act violations); *see also* 4 McCarthy on Trademarks and Unfair Competition § 25:23 (4th
21   ed. 2007) ("Since trademark infringement and unfair competition are torts, the doctrine of
22   joint tortfeasors is applicable.").  So long as there is some showing made that McNulty
23   was personally involved in the challenged conduct, Defendants' argument fails as a
24   matter law. Although TASER has not deposed McNulty to determine his exact
25   involvement with Stinger Systems – for example, whether he directly authored the
26   challenged press releases, what his exact motivations behind the press releases were,
27   whether he had authority over the publication of the press releases, and what influence
28   he had within Stinger Systems – Defendants have not met their burden of showing, as a

                                          14

1  matter of law, that McNulty had no personal involvement in the creation, drafting, and

2  publication of the releases.

3            5.    Lanham Act claim for Bestex January 17, 2008, release

4      Next, Defendants seek summary judgment on TASER's Lanham Act claim for the

5  January 17, 2008, Bestex release arguing that, in the absence of naming Bestex, no

6  claim can proceed against McNulty, Gruder, or Stinger.  Defendants note that TASER

7  does not show that Stinger or Gruder had anything to do with the release, or that

8  McNulty himself published the release.  Defendants additionally argue that TASER does

9  not demonstrate that Gruder or McNulty are direct competitors of TASER, which is

10  required to state a Lanham Act violation.

11     A principal may be held liable for infringing acts of an agent acting with actual or

12  apparent authority under the Lanham Act.  *American Tel. and Tel. Co. v. Winback and*

13  *Conserve Program, Inc.*, 42 F.3d 1421, 1429-34 (3d Cir. 1994) ("[T]he Lanham Act is

14  derived generally and purposefully from the common law tort of unfair competition, and

15  its language parallels the protections afforded by state common law and statutory

16  torts."), *cert. denied*, 514 U.S. 1103 (1995).  "[A] corporate officer's active participation in

17  infringing activity is sufficient to subject him or her to joint and several liability for

18  trademark infringement with the corporation."  *Hair Assocs., Inc. v. National Hair*

19  *Replacement Servs., Inc.*, 987 F. Supp. 569, 590-91 (W.D. Mich. 1997).  "[P]ersonal

20  liability for trademark infringement and unfair competition is established if the officer is a

21  moving, active conscious force behind [the defendant corporation's] infringement."

22  *Bambu Sales, Inc. v. Sultana Crackers, Inc.*, 683 F. Supp. 899, 913 (E.D.N.Y. 1988)

23  (internal quotations omitted).

24     TASER has not yet demonstrated that Stinger or Gruder were involved in the

25  Bestex release, and the evidence of Stinger's involvement in this release is either

26  inconclusive or nonexistent.  Given, however, Plaintiff's legitimate concerns about

27  inadequate discovery – for example, no deposition has been taken of either Gruder or

28  ///

1    Park – a ruling on the issue of Gruder or Stinger's liability for the Bestex release would

2    be premature, and is barred by Rule 56(d).

3            TASER does, however, provide sufficient evidence of McNulty's involvement in

4    the Bestex release to create a material issue of fact to warrant denial of summary

5    judgment.   Defendants,   citing   to   cases   including   *Halicki v. United Artists*

6    *Communications, Inc.*, 812 F.2d 1213 (9th Cir. 1987), ask this Court to strike Plaintiff's

7    unfair competition claim as to this release against both individual defendants since

8    neither are direct competitors of TASER's.  While it is true that the Ninth Circuit in *Halicki*

9    refused to "mutilate" the Lanham Act by expanding unfair competition actions to allow

10   those against non-competitors (in that case, a producer of a movie against a theater

11   company), Defendants pick at straws by asking this Court to rule that the individual

12   defendants must be direct competitors to TASER.  *See Waits v. Frito-Lay, Inc.*, 978 F.2d

13   1093, 1109 (9th Cir. 1992) (noting that the plaintiff in *Halicki* "lacked a discernibly

14   competitive interest: he and the distributor were not independent actors in the

15   marketplace, but rather had a contractual relationship in which the distributor agreed to

16   act in the marketplace on the plaintiff's behalf.").   A showing that either McNulty or

17   Gruder acted as agents of the infringing company (in this case, Bestex) and a showing of

18   "active participation" in or a "moving, active conscious force behind" infringing activity,

19   *see Hair Assocs., Inc.*, 987 F. Supp. at 590-91, suffices to hold them liable for Lanham

20   Act unfair competition.   Indeed, Defendants argued in their Joint Partial Motion for

21   Summary Judgment as to the civil conspiracy claim that both Gruder and McNulty were

22   agents of Stinger, thereby triggering the intra-corporate conspiracy doctrine.  (*See* dkt.

23   no. 132 at 6.)  Bestex need not be named in order for its agent to be personally liable.

24   *See, e.g.*, *Donsco, Inc. v. Casper Corp.*, 587 F.2d 602, 606 (3d Cir. 1978) (explaining

25   that individual corporate officer may be held liable for unfair infringement when he is an

26   "actual participant" in the tort); *Solo Cup Co. v. Paper Machinery Corp.*, 359 F.2d 754,

27   760 (7th Cir. 1966) ("the individual defendant cannot hide behind the corporate veil" in

28   an unfair infringement action); *Lahr v. Adell Chemical Co.*, 300 F.2d 256, 260 (1st Cir.

1  1962) (same); *Hair Associates*, 987 F. Supp. at 590-591 (same); *Bambu Sales*, 683 F.

2  Supp. at 913 (same).[5]

3        With respect to McNulty, the Court holds that Defendants have not met their

4  burden on summary judgment.  Notwithstanding whatever additional discovery Plaintiff

5  might need from McNulty, the record before the Court demonstrates that, at the very

6  least, McNulty was personally involved in the Bestex release.  An email written by

7  McNulty to the PR Wire Service with the entire release demonstrates some level of

8  personal participation in the publication of the email. This fact, alongside TASER's

9  general demonstration of McNulty's efforts to propose, write, and push the press release

10  tactics, raises a genuine issue of material fact regarding how involved McNulty was in

11  the creation and publication of the Bestex release.  TASER need not demonstrate that

12  McNulty published the release himself (though the aforementioned email is very close to

13  actual publication).  Defendants do not demonstrate as a matter of law that McNulty is

14  free from § 1125(a) liability for the Bestex release.

15             6.    Stinger's April 24, 2008, and September 6, 2008, publications

16        Finally, Defendants argue that TASER's Lanham Act claims surrounding Stinger's

17  April 24, 2008, press release and September 6, 2008, email (both relating to the Stinger

18  lawsuit that TASER claims was malicious) fail as a matter of law because TASER does

19  not demonstrate that they were false or misleading. After considering the evidence

20  available at this stage of the litigation, the Court cannot hold as a matter of law that the

21  press releases and the Stinger packet were not false or misleading.

22        "The Lanham Act was intended to make actionable the deceptive and misleading

23  use of marks and to protect persons engaged in commerce against unfair competition."

24  *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 767-68 (1992) (quoting 15 U.S.C. §

25  1127).  "Lanham Act Section 43(a) [codified as 15 U.S.C. § 1125(a)(1)] jurisprudence

26  _____

27       [5] The fact that McNulty was not a paid employee is immaterial for this analysis,
since he was, by all accounts, acting as an agent of Stinger in the course of his legal

28  counsel and release writing.

recognizes two distinct protectable interests: protection against unfair competition in the form of an action for false advertising and protection against false association in the form of a lawsuit for false endorsement." *Kournikova v. Gen. Media Commc'ns Inc.*, 278 F. Supp. 2d 1111, 1116-17 (C.D. Cal. 2003).

The prohibition on unfair competition under section 43 of the Lanham Act provides that

> [a]ny person who, on or in connection with any goods or services, . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person....
>
> * * *
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1).  "Section 43(a), 15 U.S.C. § 1125(a), is one of the few provisions [of the Act] that goes beyond trademark protection and addresses unfair competition." *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1143 (9th Cir. 2008) (quoting *Dastar v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 28 (2003)).

"To demonstrate falsity within the meaning of the Lanham Act, a plaintiff may show that the statement was literally false, either on its face or by necessary implication, or that the statement was literally true but likely to mislead or confuse consumers." *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997).  Even if the releases are literally false, the Lanham Act prohibits misleading, confusing, or deceptive advertisements.  *Id.*

### a.    *April 24, 2008 (dkt. no. 95-17)*

The press release headline reads "TASER sued for false advertising, unfair competition and injurious falsehood."  It describes how the Stinger suit arises out of the distribution of the NIJ report that the release says was based on an older version of Stinger's technology. The release includes quotations from the complaint's allegations

that describe how TASER represented to these consumers that the report was up to date.  The release also included allegedly misleading assessments of Stinger's newest technology as against TASER's.

The facts surrounding the institution of the Stinger lawsuit demonstrate at least a triable issue of fact as to whether the lawsuit was filed for the purpose of releasing misleading press statements.  First, Stinger did not serve TASER.  Second, the release does not provide adequate background into the nature of the NIJ report, who the NIJ is, or what the report said.  Third, there is evidence in the record that Stinger and McNulty wanted to pursue misleading press releases as an avenue for devaluing TASER, thereby making it more likely that the lawsuit and the April 28, 2008, release were intended to mislead.  Fourth, the telephone recordings suggest that McNulty contemplated vexatious litigation meant to drive down TASER stock.

Based on these facts, Defendants have not met their burden of demonstrating that no genuine issue of material facts exists as to whether the April 24, 2008, release was misleading. The mere fact that the Stinger lawsuit was indeed pending when the press release was distributed does not foreclose a Lanham Act claim.  *See id.*

            b.    *Kevin Scholz email and Stinger Packet (dkt. nos. 95-15 and 95-16)*

For the same reasons, there remains a genuine issue of material fact regarding whether the Scholz email and Stinger packet are misleading or deceptive.  The email sent by Scholz discusses the lawsuit of TASER and includes within its attachment an almost verbatim copy of the April 24 press release.  It additionally talks about TASER "masquerading" the NIJ report, claims there was collusion between the university conducting an independent test of TASER's products and TASER's Board of Advisors, and makes a number of other allegations against TASER.  Given that the impetus of the email appears to be the Stinger lawsuit – the subject line read "Stinger Sues TASER" – Defendants cannot demonstrate as a matter of law that the Stinger packet email or attachment were not misleading, deceptive, or confusing.

Based on the foregoing, Defendants' Joint Motion for Partial Summary Judgment is denied.

### B.       Motion for Rule 56(d) Relief (dkt no. 223)

TASER seeks a ruling from this Court denying Defendants' Joint Motion on the ground that TASER has not had adequate opportunity to reap the fruits of discovery for the purposes of responding to the Motion.  Defendants contend that Rule 56(d) relief is inappropriate because Plaintiff has all relevant information it needs to defend the Motion.

Under Fed. R. Civ. P. 56(d), if, in response to a summary judgment motion, "a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition," the Court may defer consideration of the motion, deny the motion, allow the parties time to complete additional discovery, or grant other appropriate relief.  The party requesting additional time to conduct discovery to oppose summary judgment "must show: (1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment." *Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortgage Corp.*, 525 F.3d 822, 827 (9th Cir. 2008).  If the nonmovant does not satisfy these requirements, the Court may rule on summary judgment without granting additional discovery. *Id.*  Rule 56(d) has been read as "requiring, rather than merely permitting, discovery 'where the nonmoving party has not had the opportunity to discover information that is essential to its opposition.'" *Metabolife Intern., Inc. v. Wornick*, 264 F.3d 832, 846 (9th Cir. 2001) (quoting *Anderson*, 477 U.S. at 250 n. 5).

First and foremost, because the Court denies summary judgment on the six issues discussed above, Taser's request for Rule 56(d) relief as to them is denied as moot.

///

///

///

///

The following issues require consideration of evidence not available to the nonmovant, TASER, as they have to do with questions of Stinger and Gruder's role in the challenged conduct:

1.  TASER's failure to establish Lanham Act violation for Bestex's January 17, 2008, press release (with respect to Defendants Stinger and Gruder)

2.  TASER's failure to establish Lanham Act violation for Stinger's April 24, 2008, press release and September 6, 2008, email and attachment (with respect to Defendants Stinger and Gruder)

Given that TASER has not had the opportunity to depose Gruder and Yong Suk Park (*see* dkt. no. 264 at 5-6), TASER does not have at its disposal all of the facts necessary to adequately respond to the remaining issues.  TASER's Rule 56(d) Motion as to these issues is granted.

**IV.   CONCLUSION**

Accordingly, IT IS HEREBY ORDERED THAT Defendants' Joint Motion for Partial Summary Judgment (dkt. no. 217) is DENIED.

IT IS FURTHER ORDERED THAT Plaintiff's Motion for Rule 56(d) Relief (dkt. no. 223) is GRANTED IN PART and DENIED IN PART.

DATED THIS 2nd day of August 2012.

_____
UNITED STATES DISTRICT JUDGE